**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| **DOMINION COVE POINT LNG, L.P.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. AW-07-119 |
| ) | |
| **.8701 ACRES OF LAND MORE OR** ) | |
| **LESS IN PRINCE GEORGE'S** ) | |
| **COUNTY, MARYLAND,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM OPINION

Dominion Cove Point LNG, L.P., (Plaintiff), is a natural gas company seeking condemnation of easements in order to construct a natural gas pipeline. Defendant[1] is the owner of the property Plaintiff seeks to condemn. On June 13, 2007, Plaintiff filed a Motion for Partial Summary Judgment and for Possession of Easements (Paper No. 23). Defendant's Response was due July 2, 2007. The deadline to file a Response has elapsed. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons that follow, Plaintiff's Motion for Partial Summary Judgment and for Possession of Easements will be granted.

### BACKGROUND

The following facts are either undisputed or are construed in the light most favorable Defendant.[2] Plaintiff is an interstate natural gas company as defined by § 2(a) of the Natural Gas

---

[1] There are two named Defendants: (a) .8701 Acres of Land More or Less in Prince George's County, Maryland and (b) Faye Mizzell.

[2] Defendant Mizzell did not file a response to Plaintiff's Motion for Partial Summary Judgment and for Possession of Easement. The only permissible evidence this Court may consider, pursuant to Federal Rule of Civil

1

Act, 15 U.S.C. § 717 *et seq.* As such, Plaintiff is qualified to construct, own, operate and maintain pipelines to transmit natural gas and its by-products. Defendant Faye Mizzell is the record owner of real property consisting of 8.45 acres, more or less, in the 5th Election District of Prince George's County, Maryland. The property is described in a deed dated September 23, 1997 and recorded in the land records of Prince George's County, Maryland, in Liber 11677, Folio 385. This property is further identified as follows: Tax Account ID 17-05-0339796, Map 171, Grid C1, Parcel 8. Defendant Mizzell admits being the record owner as described by Plaintiff. *See* Compl. ¶ 4; Answer ¶ 4.

Plaintiff owns a liquefied natural gas ("LNG") import facility located in Lusby, Maryland (the "Cove Point LNG Facility"). Plaintiff also operates a natural gas pipeline extending from the Cove Point LNG Facility to Marshall Hall in Charles County, Maryland, the existing pipeline. Paper No. 24 (Mordan Decl. ¶ 1).

On April 15, 2005, two Dominion companies, Plaintiff and Dominion Transmission, Inc. ("DTI") filed three separate but related certificate applications with the Federal Energy Regulatory Commission ("FERC"). These three applications collectively comprise the "Cove Point Expansion Project." The purpose of this project "is to allow the importation of LNG and to transport these new, additional, and vital supplies of natural gas to consumers throughout the eastern United States." *Id.* (Mordan Decl. ¶ 2).

Of the three FERC applications filed, one concerns the expansion of the Cove Point LNG Facility (FERC Docket No. CP05-130). The other application filed by Plaintiff concerns an approximately 48 miles of 36" diameter natural gas pipeline No. TL-532 extending from the import

---

Procedure 56, are the declarations of David L. Mordan, Jr., P.E. and Larry Sommerville filed in support of Plaintiff's motion as well as the pleadings.

terminal at Cove Point to Marshall Hall in Charles County, Maryland, on the east side of the Potomac River (FERC Docket No. CP05-132). This pipeline is the subject of the eminent domain proceedings in this case. The third application by DTI has no bearing on this litigation. *Id.* (Mordan Decl. ¶¶ 3-4).

After the three applications were extensively reviewed by FERC and numerous federal, state and local agencies, on June 16, 2006, FERC approved the Cove Point Expansion Project by issuing Certificates of Public Convenience and Necessity to Plaintiff and DTI. FERC set a deadline of June 15, 2009 for the completion of all construction activities. *Id.* (Mordan Decl. ¶ 5).

The pipeline installation project impacts two hundred eighty-five (285) properties in Charles, Calvert and Prince George's Counties, Maryland. The pipeline construction season is relatively short, roughly mid June to October. Plaintiff intends to start construction of certain segments of the TL-532 pipeline by June of 2007. Plaintiff plans to construct approximately 10 miles of the 48 miles of pipeline during 2007. Plaintiff must be ready to construct the remainder of the pipeline (approximately 38 miles) across the remaining properties beginning in June of 2008 in order to complete all construction activities during the 2008 construction season. *Id.* (Mordan Decl. ¶¶ 6-8.)

Plaintiff has hired a pipeline contractor, and in accordance with the contract, Plaintiff must "provide its contractor with access to the entire right of way for the TL-532 pipeline across all affected properties by June 2008. If [Plaintiff] is unable to do so, then the terms of [Plaintiff's] contract require it to pay a penalty." *Id.* (Mordan Decl. ¶ 11). Plaintiff cannot begin to construct the pipeline until Plaintiff acquires certain permanent and temporary easements over Defendant Mizzell's property which are necessary for constructing, maintaining, operating, altering, testing, replacing and repairing the pipeline. Defendant Mizzell shall retain the right to use her property in

any manner subject to the temporary and permanent easements which preclude Defendant Mizzell from interfering with Plaintiff's use and enjoyment of rights. Plaintiff has negotiated with Defendant Mizzell and has made bona fide efforts to acquire the easements by agreement. Plaintiff has been unable to obtain rights to the easements by contract. The parties are unable to agree on the compensation to be paid. Compl. ¶ 19; Answer ¶ 19. Plaintiff requests the right for immediate possession of the easements for the purpose of constructing the pipeline and, pursuant to the authority granted to Plaintiff by section 7(h) of the Natural Gas Act, 15 U.S.C. § 717f(h), seeks to take by eminent domain those easements.

## APPLICABLE LAW

The Natural Gas Act ("NGA"), 15 U.S.C. § 717f(h), grants gas companies the power of eminent domain. *East Tennessee Natural Gas Co. v. Sage*, 361 F.3d 808, 821 (4th Cir.), *cert. denied*, 543 U.S. 978 (2004). A gas company must first obtain a certificate of public convenience and necessity from FERC. *Id.* at 818. The application to FERC must contain, among other information, (1) a description of the proposed pipeline project, (2) a statement of the facts showing why the project is required, and (3) the estimated beginning and completion date of the project. 15 U.S.C. § 717f(d); 18 C.F.R. § 157.6(b). Notice of the application is filed in the Federal Register, 18 C.F.R. § 157.9, public comment and protest is permitted, *id.* § 157.10, and FERC conducts a public hearing on the application, *id.* § 157.11. "As part of its evaluation FERC must also investigate the environmental consequences of the proposed project and issue an environmental impact statement." *East Tennessee*, 361 F.3d at 818; *see* 42 U.S.C. § 4332. After the evaluation, FERC issues a certificate if it finds that the proposed project "is or will be required by the present or future public convenience and necessity[.]" 15 U.S.C. § 717f(e). FERC also specifies a date for

the completion of construction and the start of service. 18 C.F.R. § 157.20(b). The certificate may include any terms and conditions that FERC deems "required by the public convenience and necessity." *Id.* § 157.20. Once FERC has issued a certificate, the NGA empowers the certificate holder to exercise "the right of eminent domain" over any lands needed for the project. 15 U.S.C. § 717f(h).

The NGA provides that "[w]hen any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, . . . it may acquire the same by the exercise of the right of eminent domain in the district court of the United States. . . ." 15 U.S.C. § 717f(h). "A special rule, [Federal Rule of Civil Procedure] 71A, governs the procedure in a condemnation action." *East Tennessee*, 361 F.3d at 821. To commence the condemnation, the certificate holder must file a complaint which sets forth the authority for the taking, the use for which the property is being taken, the identity of the property, and the interest to be acquired. Fed. R. Civ. P. 71A(c)(2). The action then proceeds in due course to the determination of just compensation for the owner of the land. Fed. R. Civ. P. 71A(h). After the determination and payment of just compensation, the condemning authority can take possession of the property. *East Tennessee*, 361 F.3d at 821.

In this case Plaintiff seeks possession before the determination and payment of compensation. The Constitution does not prohibit a condemnor from obtaining possession of property before compensation is paid, and neither the NGA nor Rule 71A addresses this issue. *East Tennessee*, 361 F.3d at 821-24. However, Rule 71A provides that the other Federal Rules of Civil Procedure apply to any matter not covered by Rule 71A. *See* Fed. R. Civ. P. 71A(a). As a result, Rule 65(a)'s provision for preliminary injunctions applies to condemnation cases. "[A] gas

company with condemnation power under the NGA may apply under Rule 65(a) for a preliminary injunction awarding immediate possession." *East Tennessee*, 361 F.3d at 824. Thus, once the Court determines that the complainant has a right to take the easement, it may then consider a request for a preliminary injunction granting immediate possession. *Id.* at 825.

In deciding whether to grant a preliminary injunction, the Court should consider (1) the likelihood of irreparable harm to the plaintiff if the injunction is denied, (2) the likelihood of harm to the defendant if the injunction is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest. *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 193-96 (4th Cir. 1977). "[T]he [gas] company must demonstrate that it will suffer irreparable harm without immediate possession, and the company's harm must be weighed against any harm to the landowner." *East Tennessee*, 361 F.3d at 825 (citation omitted). Finally, the gas company must provide security for reasonably adequate and certain payment of compensation. *Id.* at 826; *see also* Fed. R. Civ. P. 71A(j) ("[t]he plaintiff shall deposit with the court any money required by law as a condition to the exercise of the power of eminent domain[.]"). The Fourth Circuit concluded that these safeguards adequately protect landowners in cases where immediate possession may be granted. *East Tennessee*, 361 F.3d at 826.

## ANALYSIS

*A.    Plaintiff is authorized to condemn the property.*

The NGA provides that:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, . . . it may acquire the same by the exercise of the right of eminent domain in the district court of the

6

United States for the district in which such property may be located. . . .

15 U.S.C. § 717f(h).

It cannot be disputed that Plaintiff holds a certificate of public convenience and necessity from FERC.  *See* Compl., Ex. 2.  Plaintiff provided Defendant Mizzell with a written offer to purchase the easements and pay for timber.  When Defendant Mizzell characterized the offer as too low, Plaintiff commissioned an appraisal which valued the easements at a lower amount.  Despite this lower value, Plaintiff stood by its original higher offer to purchase the easements.  Citing her neighbor who had received more money, Defendant Mizzell indicated she would make a counteroffer but none was ever received.  Based on Larry Sommerville's unopposed declaration, *see* Paper No. 25, as well as Defendant Mizzell's admission regarding paragraph 19 of the Complaint, it is undisputed that Plaintiff and Defendant Mizzell failed to agree upon compensation or that Plaintiff was unable to acquire the necessary easements by agreement.  Thus, in accordance with § 7(h) of the NGA, Plaintiff is entitled to condemn the property.

B.     *Plaintiff is entitled to immediate possession.*

    1.     *The likelihood of irreparable harm to Plaintiff.*

Plaintiff's Project Manager, David L. Mordan, Jr., outlined the necessity of beginning the construction of the remainder of the pipeline across all other properties in June of 2008.  Construction during the months of November through February is generally expensive and impractical due to inclement weather.  Maryland's environmental restrictions further curtail the construction season by prohibiting "constructing across intermittent streams during the period from March 1 through June 15."  Paper No. 24 (Mordan Decl. ¶ 7).  The combination of the limitations caused by weather and Maryland's environmental restrictions essentially prevent any construction

7

during the winter and spring of 2009. "Constructing certain portion[s] of the pipeline in 2007 and being ready to begin construction on all remaining properties at the start of the pipeline construction season in June of 2008 will reduce both the risk and the impact of unusually severe weather." *Id.* (Mordan Decl. ¶ 10).  Thus, for Plaintiff to comply with the FERC deadline of June 15, 2009, the remaining pipeline construction must occur during the summer and fall of 2008.

Second, as a general practice, pipeline construction is done in a linear fashion. "[I]f [Plaintiff] is unable to begin [p]ipeline construction prior to the determination of just compensation, it will be forced to repeatedly mobilize, demobilize, and remobilize its contractors, equipment, and materials around each property for which compensation has not been finalized." *Id.* (Mordan Decl. ¶ 9).  Such a process is not only inefficient but would dramatically increase construction cost, significantly delay construction and likely threaten Plaintiff's compliance with the FERC deadline.

Third, Plaintiff has selected a pipeline contractor. In accordance with the contract, Plaintiff is required to provide the pipeline contractor with access to the right of way for the pipeline across all affected properties by June of 2008.  If Plaintiff is unable to comply with these terms, Plaintiff is required to pay a penalty. "Further, if the [pipeline] contractor is unable to achieve the contractual completion dates as a result of delay due to lack of possession of the easements, there will be further financial ramifications for [Plaintiff]." *Id.* (Mordan Decl. ¶ 11).

Finally, separate hearings on compensation will be required for each of the many tracts of property Plaintiff seeks to condemn, and scheduling and conducting those hearings will take an extended period of time. *See East Tennessee*, 361 F.3d at 828.  In *East Tennessee* the Fourth Circuit concluded that the district court's finding that "the Patriot Project would suffer 'undue delay' and that this delay would cause 'significant financial harm' both to [the East Tennessee Natural Gas

Company] and some of its putative customers" was sufficient to show a likelihood of irreparable harm if immediate possession was not granted, *i.e.*, without a preliminary injunction. *Id.* at 828-29. In issuing the certificates of public convenience and necessity, FERC mandated that the construction of the facilities shall be completed within three years or by June of 2009. *See* Compl., Ex. 2 (FERC Order Issuing Certificates and Granting Section 3 Authority, at 73, para. H). This deadline underscores the significant undue expense and delay set forth in Plaintiff's evidence. The Court thus finds there is a likelihood of irreparable harm to Plaintiff if immediate possession is not granted.

    *2.       The likelihood of harm to the landowner.*

Defendant Faye Mizzell did not file a Response or Opposition to Plaintiff's Motion for Partial Summary Judgment. She did file an Answer to the Complaint, admitting paragraph 4 (she is the record owner of certain property) and admitting paragraph 19 ("Dominion has negotiated with the Owner in good faith and made bona fide efforts to acquire the necessary easements by agreement but has been unable to obtain such rights by contract or to agree on the compensation to be paid."). The unopposed Declaration of Larry Sommerville chronicles those attempts.

Mr. Sommerville, an employee of Universal Field Services, Inc., ("Universal"), has been engaged in the business of right-of-way acquisitions for almost 30 years involving more than 100 projects. Paper No. 25 (Sommerville Decl. ¶ 1). Plaintiff retained Universal to assist Plaintiff in providing land acquisition services as Plaintiff's agent for the Cove Point Expansion Project. *Id.* (Sommerville Decl. ¶ 2). According to Mr. Sommerville, on February 24, 2006, a written offer was hand delivered to Ms. Mizzell to purchase the easements for $12,033.00. Plaintiff's agent also verbally offered to pay Ms. Mizzell an additional $1,376.33 for timber. *Id.* (Sommerville Decl. ¶ 7). On April 12, 2006, Plaintiff's agent spoke with Ms. Mizzell who expressed that Plaintiff's offer

9

was quite low. Ms. Mizzell stated she would fax to Plaintiff's agent a list of sales of comparable properties in her area. *Id.* (Sommerville Decl. ¶ 8).

On April 21, 2006, Plaintiff retained Wayne McDonald, an independent and licensed real estate appraiser, to appraise the easements. *Id.* (Sommerville Decl. ¶ 9). Meanwhile, since the promised list of comparable sales had not been received, on May 6, 2006, Plaintiff's agent called Ms. Mizzell. "At that time, [Ms. Mizzell] indicated that the list of comparable sales was over a year old and had little relevance to the value of her property, but that the property next door had just been sold, and she would provide [Plaintiff's] agent with the information." *Id.* (Sommerville Decl. ¶ 10). An independent research was conducted and Plaintiff's agent could not verify that property on either side of Ms. Mizzell's property had been sold. On May 18, 2006, Plaintiff's agent informed Ms. Mizzell that Plaintiff had commissioned an appraisal of her property and would discuss the appraisal with her. *Id.* (Sommerville Decl. ¶ 11).

Mr. McDonald provided his appraisal of the easements on June 20, 2006. He concluded the easements, collectively, were worth $6,120.02. *Id.* (Sommerville Decl. ¶ 12). Nine days later, Plaintiff's agent mailed a written offer to Ms. Mizzell stating that although the appraised value of the easements is $6,120.02, Plaintiff would stand by its original offer which is higher. Plaintiff affirmed its final offer for the easements is $12,033.00 with an additional $1,367.33 for timber. Plaintiff's agent provided Ms. Mizzell a copy of Mr. McDonald's appraisal and encouraged Ms. Mizzell to call Plaintiff's agent if she had any questions. Ms. Mizzell did not respond to the June 29, 2006 letter. *Id.* (Sommerville Decl. ¶ 13).

On July 18, 2006, Plaintiff's counsel sent a letter to Ms. Mizzell restating Plaintiff's offer of $12,033.00 for the easements and $1,367.33 for timber. Plaintiff's counsel encouraged Ms.

Mizzell to contact her with any questions. *Id.* (Sommerville Decl. ¶ 14). On July 28, 2006, Ms. Mizzell called Plaintiff's counsel and remarked that Plaintiff had offered her neighbor more money. Ms. Mizzell stated she would call again with a counteroffer. No such counteroffer was ever received by Plaintiff's counsel. *Id.* (Sommerville Decl. ¶ 15). Despite it efforts, Plaintiff is unable to acquire the easements from Ms. Mizzell. *Id.* (Sommerville Decl. ¶ 16).

In authorizing the pipeline expansion project, FERC was aware that some landowners would be affected. FERC nonetheless determined "there should be *de minimis* economic impact on landowners since 75 percent of the new pipeline's length will parallel the existing Cove Point Pipeline and the remaining 25 percent of the new pipeline route will deviate from existing pipeline route in order to minimize the environmental and landowner impacts." Compl., Ex. 2 (FERC Order Issuing Certificates and Granting Section 3 Authority, ¶ 129).

What is apparent from Mr. Sommerville's declaration is Ms. Mizzell's dissatisfaction with the amount of compensation Plaintiff offered. "[T]he Constitution 'does not provide or require that compensation be paid in advance of the occupancy of the land to be taken. But the owner is entitled to reasonable, certain, and adequate provision for obtaining compensation before his occupancy is disturbed.'" *East Tennessee*, 361 F.3d at 824 (quoting *Cherokee Nation v. S. Kan. Ry. Co.*, 135 U.S. 641, 659 (1890)). Based on the evidence presented to this Court, the harm to Ms. Mizzell is not irreparable but rather is compensable. That harm therefore is outweighed by Plaintiff's immediate need for the easements.

    3.    *Plaintiff will succeed on the merits.*

The Court has found that Plaintiff, having obtained a certificate of public convenience and necessity from FERC, is authorized to condemn the property. Plaintiff's success on the merits is

established.

   4.   *The public interest.*

The Fourth Circuit has recognized the substantial public interest involved in the need for natural gas supply. *East Tennessee*, 361 F.3d at 830. Here, as in that case, FERC has evaluated the need and concluded the pipeline project is required by public convenience and necessity. *Id.* In this case, FERC explained how the project serves the public interest.

> Expansion of the Cove Point Pipeline facilities . . .will make available gas supplies which would otherwise be unavailable, providing shippers enhanced access to firm natural gas storage capabilities and to additional natural gas markets throughout the northern and eastern United States. By this proposal, new gas supplies will be delivered to where they are needed in the Mid-Atlantic and northeastern United States. The project will bring new gas supplies into the heart of the market area by providing new gas sources for the shippers on Dominion, Transco and Columbia pipeline systems, which serve most of the major eastern United States markets and where the demand for natural gas is growing. In addition, LNG is expected to play a vital role in meeting the increased demands for natural gas from all consuming sectors. The growing importance of LNG is evidenced by INGAA's[3] July 2004 study which found that a delay as short as two years in the construction[] of gas pipelines, storage facilities, and LNG import terminals will cost the United States gas consumers more than $200 billion.

Compl., Ex. 2 (FERC Order Issuing Certificates and Granting Section 3 Authority, ¶ 126).

To assure that these needs are timely met, FERC has ordered Plaintiff to complete the project by June 15, 2009. No evidence has been presented contradicting that the necessity of this project is to serve the public interest.

## CONCLUSION

---

[3] Interstate Natural Gas Association of America.

Defendant Faye Mizzell failed to present any evidence, in accordance with Rule 56, which rebuts the declarations of Mr. Mordan and Mr. Sommerville. No genuine issue of material fact has been presented. Partial summary judgment in favor of Plaintiff and against the Defendant is appropriate. Plaintiff has the right to condemn the property and has shown that a preliminary injunction granting immediate possession should issue. An Order will be entered granting Plaintiff immediate possession of the easements as described in the Complaint. Immediate possession is contingent upon Plaintiff posting, with this Court, a bond in the amount of ***$13,400.33*** with corporate surety, representing Plaintiff's value of the easements plus the cost for timber.

Date:   July 18, 2007                                                     /s/
                                                              Alexander Williams, Jr.
                                                              United States District Judge